Richard G. Himelrick (004738)
J. James Christian (023614)
**TIFFANY & BOSCO, P.A.**
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016
Telephone: (602) 255-6000
Facsimile:   (602) 255-0103
E-mail: rgh@tblaw.com; jjc@tblaw.com

Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
Elaine Chang
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: lglancy@glancylaw.com;
        mgoldberg@glancylaw.com

*Attorneys for Plaintiff Hongwei Li*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| HONGWEI LI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INSYS THERAPEUTICS, INC.; MICHAEL L. BABICH; and DARRYL S. BAKER,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Hongwei Li ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by INSYS THERAPEUTICS, INC. ("Insys" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Insys; and (c) review of other publicly available information concerning Insys.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of purchasers of Insys' securities between May 2, 2013 and May 8, 2014, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Insys is a specialty pharmaceutical company that develops and commercializes innovative supportive care products. The Company has two marketed products - Subsys, a proprietary sublingual fentanyl spray for breakthrough cancer pain in opioid-tolerant patients and Dronabinol SG Capsule, a generic equivalent to Marinol, an approved second-line treatment for chemotherapy-induced nausea and vomiting and anorexia associated with weight loss in patients with AIDS.

3.     On December 12, 2013, after the market close, the Company issued a press release announcing that it had received a subpoena from the Office of Inspector General of the Department of Health and Human Services ("HHS") in connection with an investigation of potential violations involving HHS programs.  According to the Company, the subpoena requested documents regarding Insys' sales and marketing practices relating to its Subsys product.

4.     On this news, shares of the Company's stock declined $4.70 per share, nearly 16%, to close at $25.37[1] per share on December 13, 2013, on unusually heavy trading volume.

5.     On May 8, 2014, a local Michigan news source published an article stating that Dr. Gavin Awerbuch, a Michigan neurologist, was under federal investigation and accused of defrauding Medicare for allegedly receiving $6.9 million from January 1, 2009 through February 6, 2014, for Subsys he prescribed to Medicare beneficiaries nationwide during that period.  According to the article, the doctor was responsible for over 20% of total nationwide Subsys prescriptions.

6.     On this news, shares of the Company's stock declined $6.63 per share, over 17%, to close at $32.68 per share on May 9, 2014, on unusually heavy trading volume.

7.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was engaged in illegal and/or improper marketing of Subsys; (2) that improper marketing of Subsys could lead to regulatory scrutiny; (3) that such regulatory scrutiny could expose the company to potential fines and other disciplinary actions; and (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

---

[1] On March 24, 2014, after the close of trading, Insys effected a 3-for-2 forward stock split of its common shares. Unless otherwise indicated, all common stock prices are presented in split-adjusted prices, while all daily trading volume is presented as the actual number of shares traded that day.

**JURISDICTION AND VENUE**

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. Additionally, Insys' principal executive offices are located within this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

15.     Plaintiff Hongwei Li, as set forth in the accompanying certification, incorporated by reference herein, purchased Insys common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Insys is a Delaware corporation with its principal executive offices located at 444 South Ellis Street, Chandler, Arizona 85224

17.     Defendant Michael L. Babich ("Babich") was, at all relevant times, Chief Executive Officer ("CEO") and a director of Insys.

18.     Defendant Darryl S. Baker ("Baker") was, at all relevant times, Chief Financial Officer ("CFO") of Insys.

19.     Defendants Babich and Baker are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Insys' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Insys is a specialty pharmaceutical company that develops and commercializes innovative supportive care products. The Company has two marketed products - Subsys, a proprietary sublingual fentanyl spray for breakthrough cancer pain in opioid-tolerant patients and Dronabinol SG Capsule, a generic equivalent to Marinol, an approved second-line treatment for chemotherapy-induced nausea and vomiting and anorexia associated with weight loss in patients with AIDS.

21.     On or around May 2, 2013, Insys filed its Registration Statement with the SEC on Form S-1/A for its Initial Public Offering (IPO).

**Materially False and Misleading
<u>Statements Issued During the Class Period</u>**

22.     The Class Period begins on May 2, 2013.  On this day, the Company filed with the SEC its IPO Prospectus, which forms part of the IPO Registration Statement that was declared effective on May 2, 2013.  Therein, the Company, in relevant part, stated:

> In March 2012, we launched Subsys, our proprietary sublingual fentanyl spray for breakthrough cancer pain, or BTCP, in opioid-tolerant patients, through our cost-efficient commercial organization of approximately 50 sales professionals. In March 2013, we increased the size of our commercial organization to approximately 67 sales professionals to enhance our Subsys sales and marketing capabilities. In February 2013, Subsys was the second most prescribed branded transmucosal immediate-release fentanyl, or TIRF, product with 16.1% market share on a prescription basis according to Source Healthcare Analytics.
>
> *          *          *
>
> We employ a targeted, cost-efficient approach to commercialization and product development. Our commercial organization utilizes an incentive-based sales model similar to that employed by Sciele Pharma, Inc. and other companies previously led by members of our management team and board, including our founder and Executive Chairman. The physician prescriber base for TIRF products is concentrated with approximately 1,850 physicians writing 90% of all TIRF product prescriptions from the launch of Subsys through February 2013. As a result, we are able to promote Subsys using a highly targeted approach designed to maximize impact with physicians. In the fourth quarter of 2012, our aggregate sales and marketing expenditures were $3.1 million, and we generated $4.8 million in Subsys net revenue.

23.     On June 3, 2013, the Company issued a press release entitled, "Insys Therapeutics Reports First Quarter 2013 Results."  Therein, the Company, in relevant part, stated:

Insys Therapeutics, Inc. (NASDAQ: INSY), a specialty pharmaceutical company that develops and commercializes innovative supportive care products, today announced its financial results for the three months ended March 31, 2013.

Financial highlights during the first quarter of 2013:

- Total first quarter revenue increased to $11.1 million in 2013 versus $2.0 million in 2012

- Sales of Subsys added $9.7 million in net revenue during the first three months of 2013

- First quarter net income of $0.1 million and diluted earnings per share of $0.01 compared to a net loss of $6.7 million and diluted loss per share of $0.72 for the first quarter of 2012

"Growth in Subsys sales and a strengthened balance sheet from our May 2013 IPO have left us well-positioned to build upon our strong supportive care franchise and generate value for stockholders," said Michael L. Babich, President and Chief Executive Officer.

**First Quarter 2013 Financial Results**

Total net revenue increased by 446% to $11.1 million for the first quarter of 2013, compared with $2.0 million for the first quarter of 2012 as outlined below (in millions):

|  | Three Months Ended March 31, | | Increase (Decrease) | |
|---|---|---|---|---|
|  | 2013 | 2012 | | |
| Product sales, net |  |  |  |  |
| Subsys | $   9.7 | $    — | $ | 9.7 |
| Dronabinol SG Capsule | 1.4 | 2.0 | | (0.6) |
| Total net revenue | $   11.1 | $    2.0 | $ | 9.1 |

Net income for the first quarter of 2013 was $0.1 million and diluted earnings per share was $0.01 compared to a net loss of $6.7 million and diluted loss per share of $0.72 for the first quarter of 2012. Gross margin was 84% for the first quarter of 2013, compared with 37% for the first quarter of 2012, primarily a result of the increase in sales of Subsys, which has a higher gross margin than Dronabinol, during the first quarter of 2013.

24.    On June 5, 2013, Insys filed its Quarterly Report with the SEC on Form 10-Q for the 2013 fiscal first quarter.  The Company's Form 10-Q was signed by Defendants Babich and Baker, and reaffirmed the Company's statements previously announced on June 3, 2013.

25.    On August 13, 2013, the Company issued a press release entitled, "Insys Therapeutics Reports Second Quarter 2013 Results."  Therein, the Company, in relevant part, stated:

> Insys Therapeutics, Inc. (NASDAQ: INSY), a specialty pharmaceutical company with focus on supportive care products for cancer patients, today announced its financial results for the three months ended June 30, 2013.
>
> Financial highlights during the second quarter of 2013:
>
> - Total second quarter net revenue increased to $18.8 million in 2013 versus $3.5 million in 2012
>
> - Subsys generated $18.5 million in net revenue during the second quarter of 2013, up 90.8% quarter-over-quarter from $9.7 million in the first quarter of 2013
>
> - Second quarter net income of $4.5 million and diluted earnings per share of $0.26 compared to a net loss of $6.4 million ($0.68 per share) for the second quarter of 2012
>
> - Strengthened balance sheet through IPO in May
>
> - Insys shares added to the Russell 2000® Index as of July 1, 2013
>
> "Our strong second quarter results were driven by continued uptake of Subsys," said Michael L. Babich, President and Chief Executive Officer. "We are excited to have achieved our second quarter of profitability and look forward to building value for shareholders as we continue to execute on our marketing plan. The continued growth we have achieved allows us to accelerate reinvestment in both our research and development and sales and marketing efforts."

**Second Quarter 2013 Financial Results**

Total net revenue increased $7.7 million, or 70%, to $18.8 million when compared to first quarter 2013 net revenue of $11.1 million. In addition, second quarter 2013 net revenue increased $15.3 million when compared to second quarter 2012 net revenue of $3.5 million. A summary of total revenue is outlined below (in millions):

| | Three Months Ended June 30, | | Increase (Decrease) |
|---|---|---|---|
| | 2013 | 2012 | |
| Product sales, net | | | |
| Subsys | $  18.5 | $  1.2 | $  17.3 |
| Dronabinol SG Capsule | 0.3 | 2.3 | (2.0) |
| Total net revenue | $  18.8 | $  3.5 | $  15.3 |

Net income for the second quarter of 2013 was $4.5 million and diluted earnings per share was $0.26 compared to a net loss of $6.4 million and diluted loss per share of $0.68 for the second quarter of 2012. Gross margin was 86% for the second quarter of 2013, compared to 34% for the second quarter of 2012: the improvement was primarily a result of the significant increase in sales of Subsys which has a higher gross margin than Dronabinol, during the second quarter of 2013.

26.     On August 13, 2013, Insys filed its Quarterly Report with the SEC on Form 10-Q for the 2013 fiscal second quarter. The Company's Form 10-Q was signed by Defendants Babich and Baker, and reaffirmed the Company's statements previously announced that day.

27.     On November 12, 2013, Insys filed a press release entitled, "Insys Therapeutics Reports Third Quarter 2013 Results." Therein, in relevant part, the Company stated:

Insys Therapeutics, Inc. (Nasdaq: INSY), a specialty pharmaceutical company with focus on supportive care products for cancer patients, today announced its financial results for the three months ended September 30, 2013.

Highlights of the 2013 third quarter included:

- Total net revenue increased to $29.2 million in the third quarter of 2013 versus $4.8 million for the third quarter of 2012;

- Revenues from Subsys® (fentanyl sublingual spray) were $28.4 million, up 1,002% over third quarter of 2012 levels and up 53% as compared with the second quarter of 2013;

- Net income of $11.6 million and diluted earnings per share of $0.51, compared to a net loss of $4.3 million ($0.46 per share) for the third quarter of 2012; and,

- Listing of two U.S. Patents covering Subsys use and formulation in FDA's Orange Book.

"Our strong results this quarter were driven by continued prescription growth of the Subsys franchise to alleviate breakthrough pain for cancer patients," said Michael L. Babich, President and Chief Executive Officer. "The product, with its simple, one-step administration system, has captured over 30% share of the transmucosal immediate-release fentanyl (TIRF) market, and we aim to drive further growth through execution of our marketing strategy."

**Third Quarter 2013 Financial Results**

Total net revenue for the third quarter of 2013 was $29.2 million, an increase of $24.4 million as compared to $4.8 million for the third quarter of 2012. On a sequential basis, third quarter 2013 net revenue increased by $10.4 million from second quarter 2013 net revenue of $18.8 million. A summary of total revenue is outlined below (in millions):

| | Three Months Ended September 30, | | Increase (Decrease) |
|---|---|---|---|
| | 2013 | 2012 | |
| Product sales, net | | | |
| Subsys | $   28.4 | $   2.6 | $   25.8 |
| Dronabinol SG Capsule | 0.8 | 2.2 | (1.4) |
| Total net revenue | $   29.2 | $   4.8 | $   24.4 |

Gross margin was 89% for the third quarter of 2013, compared to 59% for the third quarter of 2012. The improvement was primarily a result of the

significant increase in sales of Subsys, which has a higher gross margin than Dronabinol SG Capsule.

28.    On November 12, 2013, Insys filed its Quarterly Report with the SEC on Form 10-Q for the 2013 fiscal third quarter.  The Company's Form 10-Q was signed by Defendants Babich and Baker, and reaffirmed the Company's statements previously announced that day.

29.    On December 12, 2013, after the market close, the Company issued a press release entitled, "Insys Therapeutics Receives Subpoena From Office of Inspector General."  Therein, the Company, in relevant part, stated:

> Insys Therapeutics, Inc. (Nasdaq: INSY) announced today that it has received a subpoena from the Office of Inspector General of the Department of Health and Human Services ("HHS") in connection with an investigation of potential violations involving HHS programs. The subpoena requests documents regarding Subsys®, including Insys' sales and marketing practices relating to this product. Insys intends to cooperate with the investigation.

30.    On this news, shares of the Company's stock declined $4.70 per share, nearly 16%, to close at $25.37 per share on December 13, 2013, on unusually heavy trading volume.

31.    On March 4, 2014, Insys filed a press release entitled, "Insys Therapeutics Reports Fourth Quarter and Year End 2013 Results."  Therein, in relevant part, the Company stated:

> Insys Therapeutics, Inc. (Nasdaq: INSY), a specialty pharmaceutical company with a focus on supportive care products for cancer patients, today announced its financial results for the three- and twelve- month periods ended December 31, 2013. Fourth quarter 2013 highlights include:
>
> - Total net revenue increased to $40.2 million versus $5.2 million for the fourth quarter of 2012;

- Revenues from Subsys® (fentanyl sublingual spray) were $39.2 million, up 719% over fourth quarter of 2012 levels and up 38% as compared with $28.4 million in the third quarter of 2013;

- Net income of $24.1 million, or $1.01 per diluted share, compared to a net loss of $7.1 million, or ($0.76) per basic and diluted share, for the fourth quarter of 2012. The 2013 period includes the impact of a $9.7 million income tax benefit due to the reversal of deferred tax asset valuation allowance;

- Non-GAAP adjusted net income, which excludes the $9.7 million income tax benefit, was $17.1 million, or $0.71 per diluted share; and,

- Advanced a robust pipeline focused on innovative supportive care and therapy products; Insys expects to file at least one New Drug Application (NDA) and at least four Investigational New Drug (IND) applications in 2014.

"Our solid results for the quarter and year were driven by strong growth in Subsys prescriptions to alleviate breakthrough pain for cancer patients," said Michael L. Babich, President and Chief Executive Officer. "In December 2013, Subsys was the most prescribed branded transmucosal immediate-release fentanyl (TIRF) product. We believe that its simple, one-step administration system and rapid onset will enable further growth of our market share for and net revenue from this unique product."

**Fourth Quarter 2013 Financial Results**

Total net revenue for the fourth quarter of 2013 was $40.2 million, an increase of $35.0 million as compared to $5.2 million for the fourth quarter of 2012.  On a sequential basis, fourth quarter 2013 net revenue increased by $11.0 million from third quarter 2013 net revenue of $29.2 million. A summary of total revenue is outlined below (in millions):

| | Three Months Ended December 31, | | Increase |
| | 2013 | 2012 | (Decrease) |
|---|---|---|---|
| Product sales, net | | | |
| Subsys | $ 39.2 | $ 4.8 | $ 34.4 |
| Dronabinol SG Capsule | 1.0 | 0.4 | 0.6 |
| Total net revenue | $ 40. 2 | $ 5.2 | $ 35.0 |

Gross margin was 87% for the fourth quarter of 2013 compared with 60% for the fourth quarter of 2012. The increase in gross margin was due primarily to a shift in sales mix toward Subsys, which has higher margins than Dronabinol SG Capsule.

\* \* \*

**2013 Financial Results**

Total net revenue for the year ended December 31, 2013, was $99.3 million, an increase of $83.8 million as compared to $15.5 million for the year ended December 31, 2012.  A summary of total revenue is outlined below (in millions):

| | Twelve Months Ended December 31, | | Increase (Decrease) |
|---|---|---|---|
| | 2013 | 2012 | |
| Product sales, net | | | |
| Subsys | $ 95.8 | $ 8.6 | $ 87.2 |
| Dronabinol SG Capsule | 3.5 | 6.9 | (3.4) |
| Total net revenue | $ 99.3 | $ 15.5 | $ 83.8 |

Gross margin for 2013 was 87%, compared with 51% for 2012. The increase in gross margin was due primarily to a shift in sales mix toward Subsys, which has higher margins than Dronabinol SG Capsule.

32.   On March 5, 2014, Insys filed its Annual Report with the SEC on Form 10-K for the 2013 fiscal year.  The Company's Form 10-K was signed by Defendants Babich and Baker, and reaffirmed the Company's statements previously announced on March 4, 2013.

33.   The statements contained in ¶¶22-29, 31-32 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company was engaged in illegal and/or improper marketing of Subsys; (2) that improper marketing of Subsys could lead to regulatory scrutiny; (3) that such regulatory scrutiny could expose the company to potential fines and other disciplinary

actions; and (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

### Disclosures at the End of the Class Period

34.     On May 8, 2014, a local Michigan news source published an article entitled, "Michigan neurologist under federal Medicare fraud investigation." The article, in relevant part, stated:

> Medicare paid Awerbuch $6.9 million from Jan. 1, 2009, through Feb. 6, 2014, for Subsys he prescribed. The next highest amount a U.S. prescriber received was $1.6 million.
>
> "Awerbuch is responsible for approximately 20.3 percent of the Subsys prescribed to Medicare beneficiaries nationwide during this time," the affidavit stated.
>
> He wrote 1,283 prescriptions for the drug in five years, while the next closest prescriber wrote 203 prescriptions, the complaint stated.

35.     On this news, shares of the Company's stock declined $6.63 per share, over 17%, to close at $32.68 per share on May 9, 2014, on unusually heavy trading volume.

### CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Insys' securities between May 2, 2013 and May 8, 2014, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Insys' securities were actively traded on the NASDAQ Stock Market ("NASDAQ"). While the exact number of Class members is

unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Insys shares were traded publicly during the Class Period on the NASDAQ.  As of February 26, 2014, Insys had 22,273,494 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Insys or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Insys; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

41.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively

small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

42.    The market for Insys' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Insys' securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Insys' securities relying upon the integrity of the market price of the Company's securities and market information relating to Insys, and have been damaged thereby.

43.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Insys' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Insys' business, operations, and prospects as alleged herein.

44.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Insys' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other

members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

45.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

46.     During the Class Period, Plaintiff and the Class purchased Insys' securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

47.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Insys, his/her control over, and/or receipt and/or modification of Insys' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Insys, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

48.     The market for Insys' securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or

failures to disclose, Insys' securities traded at artificially inflated prices during the Class Period.   On March 4, 2014, the Company's stock closed at a Class Period high of $55.58 per share.   Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Insys' securities and market information relating to Insys, and have been damaged thereby.

49.     During the Class Period, the artificial inflation of Insys' stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Insys' business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Insys and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

50.     At all relevant times, the market for Insys' securities was an efficient market for the following reasons, among others:

(a)     Insys stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, Insys filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Insys regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-

ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Insys was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

51.     As a result of the foregoing, the market for Insys' securities promptly digested current information regarding Insys from all publicly available sources and reflected such information in Insys' stock price. Under these circumstances, all purchasers of Insys' securities during the Class Period suffered similar injury through their purchase of Insys' securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Insys who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

53.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.   During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Insys' securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

55.   Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Insys' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Insys' financial well-being and prospects, as specified herein.

57.   These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of

Insys' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Insys and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

59.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Insys' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.    As demonstrated by Defendants'

overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Insys' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Insys' securities during the Class Period at artificially high prices and were damaged thereby.

61.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Insys was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Insys securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of Insys within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.     As set forth above, Insys and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.

By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:  May 19, 2014.

**TIFFANY & BOSCO, P.A.**


By:  *s/ Richard G. Himelrick*
Richard G. Himelrick (004738)
J. James Christian (023614)
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016
Telephone: (602) 255-6000
Facsimile:   (602) 255-0103

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
Elaine Chang
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Hongwei Li*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*s/ Shelley Boettge*
Shelley Boettge